# EXHIBIT A

Case Documents (SCC DocketSearch)

| Case Summary | Staff Details | Service List | Case Activity | Case Participants | Documents |
|---|---|---|---|---|---|

DOCUMENTS LIST FOR CASE NUMBER : PUR-2021-00116
June 03, 2021 08:00:14 PM
Documents Filed Prior To April 2002 Will Not Be Displayed.

| Document Name | Date Filed |
|---|---|
| Zayo Group, LLC - Petition for an order certifying that a public necessity or an essential public convenience requires the use of eminent domain with regard to property belonging to Norfolk Southern Railway Company. | 05/27/2021 |

*For general case information, contact Ken Schrad (mailto:Ken.Schrad@scc.virginia.gov) in the Division of Information Resources - (804) 371-9141. For official copies, contact the Office of the Clerk, Document Control Center - (804) 371-9838.*

https://scc.virginia.gov/DocketSearch#caseDocs/142122      1/2

Case Documents (SCC Docket Search)

For general case information, contact Ken Schrad (mailto:Ken.Schrad@scc.virginia.gov) in the Division of Information Resources - (804) 371-9141. For official copies, contact the Office of the Clerk, Document Control Center - (804) 371-9838.

https://scc.virginia.gov/DocketSearch#caseDocs/142122

2/2

# Virginia State Corporation Commission
# eFiling CASE Document Cover Sheet

**Case Number (if already assigned)**  PUR-2021-00116

**Case Name (if known)**  Petition of Zayo Group, LLC for an order certifying that a public necessity or an essential public convenience requires the use of eminent domain with regard to property belonging to Norfolk Southern Railway Company

**Document Type**  EXPE

**Document Description Summary**  Petition to exercise eminent domain.

**Total Number of Pages**  32

**Submission ID**  21921

**eFiling Date Stamp**  5/27/2021   9:03:09AM



**ECKERT**

ATTORNEYS AT LAW

Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, VA 23219

TEL   804 788 7740
FAX   804 698 2950
www.eckertseamans.com

Eric M. Page
804.788.7771 Direct
epage@eckertseamans.com

May 27, 2021

**By Electronic Filing**
Mr. Bernard J. Logan, Clerk
State Corporation Commission
Document Control Center
Post Office Box 2118
Richmond, Virginia 23218

      *Re:*    *Case No. PUR-2021-00116*
             *Petition of Zayo Group, LLC For an order certifying that a public necessity or an essential public convenience requires the use of eminent domain with regard to property belonging to Norfolk Southern Railway Company, for permission to exercise the power of eminent domain, and for an injunction to maintain the status quo*

Dear Mr. Logan:

      Please find enclosed for filing on behalf Of Zayo Group, LLC, a Petition in the above matter.

      Thank you for filing this document in the appropriate manner, and please do not hesitate to contact me if you have any questions or if you need anything further.

                            Sincerely,

                            */s/ Eric M. Page*

                            Eric M. Page

Enclosure
cc:    William H. Chambliss, Esquire
       C. Meade Browder, Jr., Esquire

BEFORE THE
COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

| | |
|---|---|
| PETITION OF ) | |
| ) | |
| ZAYO GROUP, LLC ) | |
| ) | |
| For an order certifying that a public necessity or ) | Case No. PUR-2021- 00116 |
| an essential public convenience requires the use ) | |
| of eminent domain with regard to property ) | |
| belonging to Norfolk Southern Railway Company, ) | |
| for permission to exercise the power of eminent ) | |
| domain, and for an injunction to maintain ) | |
| the status quo ) | |

## PETITION OF ZAYO GROUP, LLC

Zayo Group, LLC ("Zayo" or "Petitioner"), by its undersigned counsel and pursuant to

Virginia Code § 25.1-102 and 5 VAC 5-20-100 (B) of the Rules of Practice and Procedure of the

Virginia State Corporation Commission ("Commission"), hereby petitions the Commission for an

order certifying that a public necessity or an essential public convenience shall require that Zayo

may take by condemnation proceedings property belonging to Norfolk Southern Railway

Company ("Norfolk Southern"). Norfolk Southern is a corporation possessing the power of

eminent domain. In support of its Petition, Zayo states as follows:

## I.    THE PARTIES

1.      Zayo, a limited liability company organized under the laws of the State of

Delaware, is a public service company authorized to provide local and interexchange

telecommunications services in Virginia pursuant to Certificates of Public Convenience and

Necessity Nos. T-707 and TT-260A, respectively, issued by the Commission in its Final Order of

March 23, 2011, in Case No. PUC-2011-00014. Zayo is authorized by Virginia Code § 56-49 to

exercise the power of eminent domain and to acquire interests in real property in the exercise of its public service obligation.

Correspondence or communications pertaining to this Petition should be directed to Petitioner's counsel of record:

> Eric M. Page (V.S.B. No. 18103)
> Cody T. Murphey (V.S.B. No. 89437)
> ECKERT SEAMANS CHERIN & MELLOTT, LLC
> 919 East Main Street, Suite 1300
> Richmond, VA 23219
> (804) 788-7771
> (804) 698-2950 (fax)
> epage@eckertseamans.com
> cmurphey@eckertseamans.com

and

> Charles A. Zdebski (V.S.B. No. 37519)
> Jeffrey P. Brundage (V.S.B. No. 80179)
> ECKERT SEAMANS CHERIN & MELLOTT, LLC
> 1717 Pennsylvania Avenue, NW, 12th Floor
> Washington, D.C. 20006
> (202) 659-6605
> (202) 659-6699 (fax)
> czedebski@eckertseamans.com
> jbrundage@eckertseamans.com

2.    Norfolk Southern is a public service company organized pursuant to Chapter 13 of Title 56 of the Virginia Code that operates as a railroad corporation organized and existing under the laws of the Commonwealth of Virginia and is authorized to exercise the power of eminent domain to acquire real property in the exercise of its public service obligations pursuant to Virginia Code § 56-347.

## II.   STATUTORY CRITERIA

3.   Virginia Code § 56-49 (2) provides that Virginia public service company[1] may

acquire by the exercise of the right of eminent domain any lands or estates or interests therein, sand, earth, gravel, water or other material, structures, rights-of-way, easements or other interests in lands, including lands under water and riparian rights, of any person, which are deemed necessary for the purposes of construction, reconstruction, alteration, straightening, relocation, operation, maintenance, improvement or repair of its lines, facilities or works, and for all its necessary business purposes incidental thereto, for its use in serving the public either directly or indirectly through another public service corporation, including permanent, temporary, continuous, periodical or future use, whenever the corporation cannot agree on the terms of purchase or settlement with any such person because of the incapacity of such person or because of the inability to agree on the compensation to be paid or other terms of settlement or purchase ....

4.   Pursuant to Virginia Code § 25.1-102 (A), before a public service company may

file a petition taking by condemnation the property belonging to another company possessing the

power of eminent domain, a petition such as the one filed by Zayo herein, must be filed with the

Commission.  Before exercising its right of eminent domain over property belonging to Norfolk

Southern, the Commission must, after notice to parties in interest and an opportunity for a hearing,

"certify that a public necessity or that an essential public convenience shall ... require" the taking

and shall give its permission for the taking.  Further, the Commission may not allow a corporation

to take by a condemnation proceeding "any property owned by and essential to the purposes of

another corporation possessing the power of eminent domain."  In addition, pursuant to Virginia

Code § 25.1-102 (B), upon giving permission for Zayo to commence a condemnation proceeding,

the Commission "shall establish for use in any condemnation proceeding whether any payment for

---

[1] While Virginia Code § 56-49 limits the use of the power of eminent domain to "public service *corporation(s),*" Virginia Code § 56-1 allows *limited liability companies* organized outside of Virginia such as Zayo to exercise the power of eminent domain.

stranded investment is appropriate and, if so, the amount of such payment and any conditions thereof."

## III.    THE PARTIES' CONTRACTUAL HISTORY

5.      On November 19, 1999, Norfolk Southern and Metromedia Fiber Network Services, Inc. ("Metromedia") entered into a Duct Lease ("Lease"), allowing, *inter alia*, for Metromedia for the next twenty (20) years to place its fiber optic cable ("Fiber Facilities") and occupy a continuous two-inch duct belonging to Norfolk Southern (the "Duct") that runs parallel to facilities owned by Norfolk Southern for 24.7 miles extending from Alexandria, Virginia to Manassas, Virginia (the "Route"). Norfolk Southern is the holder of certain rights with respect to railroad rights-of-way along the Route. A copy of the Lease is attached hereto as Exhibit A. Subsequent to the execution of the Lease, Metromedia assigned its rights to the Lease to Zayo.

6.      Through the rights obtained in the Lease and the amendments thereto, Zayo is able to provide telecommunications services to customers in Virginia and elsewhere. Zayo is contractually obligated to continue to provide those telecommunications services through its Fiber Facilities, as it has done for over twenty (20) years.

7.      In April 2019, Zayo exercised its right to renew the Lease. Subsequent thereto, the parties attempted to determine an adjusted rental rate ("Adjusted Rental"). On April 9, 2020, Zayo and Norfolk Southern entered into a Third Amendment to the Lease which, *inter alia*, allows Zayo's fiber optic cable to remain in the Duct while the parties continue to negotiate the terms of the Adjusted Rental. A copy of the Third Amendment to the Lease is attached hereto as Exhibit B. Norfolk Southern insists that the Adjusted Rental Rate increase from the current rate of $201,117.42 to $2,340,000.00 per year. Despite Zayo's good faith negotiation, Zayo and Norfolk

-4-

Southern have been unable to agree on an Adjusted Rental based on the fair market value of the Lease to allow for Zayo's continued occupancy of the Duct.

8.      Zayo and Norfolk Southern have been unable to negotiate an Adjusted Rental, and Norfolk Southern has informed Zayo its belief that Zayo has breached the Lease. Norfolk Southern has begun to "initiate the process of winding down the [Lease]" and seek damages in a lawsuit to be filed in the United States District Court for the Eastern District of Virginia.

## IV.     REQUESTED RELIEF

9.      The Fiber Facilities and the Fiber Facilities' placement in the Duct are necessary for the purpose of the operation of Zayo's operations, and for all its necessary business purposes incidental thereto, and for Zayo's use in serving the public either directly or indirectly through another public service corporation, including permanent, temporary, continuous, periodical or future use. Consequently, the Commission should certify that a public necessity or that an essential public convenience require that Zayo use its power of eminent domain with regard to the Duct owned by Norfolk Southern.

10.     On the other hand, the Duct is not property "owned by and essential to the purposes of" Norfolk Southern, in part because of Zayo's occupancy of the duct for over twenty (20) years.

11.     It is therefore necessary for the Commission to give its permission to Zayo to a condemnation of the Duct and the underlying property rights belonging to Norfolk Southern through which the Duct traverses.

12.     Because the Fiber Facilities are necessary for Zayo to continue to provide services to its telecommunications customers, Zayo respectfully requests that in addition to the relief requested herein, the Commission maintain the status quo and enjoin Norfolk Southern from taking

any action that would disrupt or otherwise interfere with Zayo's use of the Duct until such time as Zayo has completed proceedings conducted pursuant to Virginia Code § 25.1-102 (A).

## V.    CONCLUSION

WHEREFORE, for the foregoing reasons, Zayo Group, LLC respectfully requests that the Commission enter an order certifying that a public necessity or an essential public convenience requires that Zayo may take by condemnation proceedings property belonging to Norfolk Southern Railway Company as set forth herein; give Zayo permission pursuant to Virginia Code § 25.1-102 for Zayo to file a petition to take property belonging to Norfolk Southern by condemnation proceedings; that the Commission enjoin Norfolk Southern from taking any action that would disrupt or otherwise interfere with Zayo's use of the Duct as requested herein; and for such further relief as may be appropriate.

-6-

Respectfully Submitted,

**ZAYO GROUP, LLC**

*/s/ Eric M. Page*

By: _____
              Counsel

Eric M. Page (V.S.B. No. 18103)
Cody T. Murphey (V.S.B. No. 89437)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
919 East Main Street, Suite 1300
Richmond, VA 23219
(804) 788-7771
(804) 698-2950 (fax)
epage@eckertseamans.com
cmurphey@eckertseamans.com

Charles A. Zdebski (V.S.B. No. 37519)
Jeffrey P. Brundage (V.S.B. No. 80179)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, NW, 12th Floor
Washington, D.C. 20006
(202) 659-6605
(202) 659-6699 (fax)
czedebski@eckertseamans.com
jbrundage@eckertseamans.com
Attorneys for Applicant

Dated: May 27, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was sent via electronic mail this 27th day of May 2021 to the following:

Gordon D. Todd, Esquire
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
gtodd@sidley.com

William H. Chambliss, Esquire
Office of General Counsel
State Corporation Commission
1300 East Main Street
P.O. Box 1197
Richmond, VA 23218
william.chambliss@scc.virginia.gov

C. Meade Browder, Jr., Esquire
Office of the Attorney General
Division of Consumer Counsel
202 N. 9th Street, Floor 8
Richmond, VA 23219
mbrowder@oag.state.va.us

*/s/ Eric M. Page*

# EXHIBITS

Exhibit A                  Duct Lease of November 19, 1999

Exhibit B                  Third Amendment to the Duct Lease of April 9, 2020

**Exhibit A**

**EXHIBIT A**

### DUCT LEASE

**THIS DUCT LEASE** ("Lease") is made as of the *18th* day of November, 1999 (the "Effective Date") between **NORFOLK SOUTHERN RAILWAY COMPANY**, a Virginia corporation having a business address at 600 West Peachtree Street, NW, Atlanta, Georgia 30308-3603 ("Lessor") and **METROMEDIA FIBER NETWORK SERVICES, INC.**, a Delaware corporation, One North Lexington Avenue, White Plains, New York 10601 ("Lessee").

### RECITALS

WHEREAS, Lessor is the holder of certain rights with respect to railroad rights-of-way between the points described in EXHIBIT A (the "RW Route"), and is the owner of a vacant, continuous 2" duct within said rights-of-way; and

WHEREAS, Lessee desires to enter into this Lease conveying to Lessee the exclusive right (subject to prior rights, leases, encumbrances, easements and reservations) to occupy and use Lessor's vacant duct within the RW Route for the purpose of installing and operating a fiber optic communications system;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows.

1. ***Granting Clause***.  Lessor hereby leases to Lessee and Lessee leases from Lessor the exclusive right to use the duct ("Leased Facilities") described on Exhibit B and the non-exclusive right to use and occupy the RW Route and to install thereon the Lessee's Installation (defined below).

2. ***Use***.  Lessee shall have the right to use the Leased Facilities for the purpose of constructing, installing, operating and maintaining Lessee's fiber optic cable, innerducts, manholes, huts (subject to available space) and related equipment, as more particularly described on EXHIBIT C attached hereto ("Lessee's Installation") and the right, at any manhole or hut (if included), to construct underground connections between Lessee's Installation and offsite network elements, such as other portions of Lessee's network, POP sites, and Lessee's customers' facilities without any additional cost.  Huts must be fenced, may be no closer than 30 feet from the centerline of the nearest track, and no closer than 500 feet from the nearest at-grade crossing.  Lessee shall use the Leased Facilities only for the use described herein and for no other use or purpose.  Lessee shall not use or permit any other person to use the Leased Facilities for any unlawful purposes.  Lessee shall at all times conform to, and cause all persons using or occupying any part of the Leased Facilities by authority of Lessee to comply with all public laws, ordinances, rules, orders and regulations from time to time applicable thereto and regardless of when they become or became effective, including, without limitation, those relating to health, safety, noise, environmental protection, waste disposal and air and water quality, and shall furnish satisfactory evidence of such compliance upon request of Lessor.  The foregoing shall not obligate Lessee to remediate any pre-existing environmental condition in the RW Route.

3. ***Term; Early Termination***.  The term of this Lease (the "Initial Term") shall commence on the Effective Date hereof and shall expire on the twentieth (20th)

1

anniversary hereof. Provided Lessee shall not be in default hereunder, Lessee shall have the right to renew this Lease for two "Renewal Terms" of ten (10) years (the "Renewal Terms") each commencing on the expiration of the Initial Term, or the prior Renewal Term, as applicable. Each Renewal Term shall be exercisable by notice given to Lessor not less than six (6) months prior to the expiration of the Initial Term or prior Renewal Term, as applicable. The Initial Term and Renewal Terms are collectively referred to as the "Term." After the 10th anniversary of the Effective Date hereof, Lessee shall have the right to terminate this Lease by giving Lessor not less than 12 months' prior written notice and paying Lessor an early termination fee equal to one-half the amount of the Rental which would otherwise have been payable but for the early termination, discounted to present value at a discount rate of 9% per annum.

4. **Rental.**

a) Commencing on the Effective Date, Lessee shall pay to Lessor the amounts specified in EXHIBIT D attached hereto. The Rental shall be payable in advance on the first day of each calendar month during the Term. Any Rental not paid within thirty (30) days of the date when due shall accrue interest at 10% per annum until paid.

b) Rental for the Renewal Term(s)(the "Adjusted Rental") shall reflect the fair market value of this Lease, which shall mean the fair rental value of the Leased Facilities and the rights granted herein for the Renewal Term for the uses permitted herein; provided, however, that in no event shall the Adjusted Rental be less than the Rental (or Adjusted Rental) as adjusted pursuant to Section 4(c) in effect immediately prior to a Renewal Term. Lessor initially shall propose the Adjusted Rental and shall notify Lessee thereof during the last six (6) months of the Initial Term or preceding Renewal Term. If Lessee objects to Lessor's proposed Adjusted Rental, Lessee at its sole cost will obtain and submit to Lessor an appraisal by an MAI member within sixty (60) days of Lessor's notice. If Lessor disagrees with Lessee's appraisal, Lessor at its sole cost will obtain a second appraisal by an MAI member. If Lessee's and Lessor's appraisers cannot reach agreement, they will select, and Lessor and Lessee will jointly compensate, a third appraiser similarly qualified, and the three shall determine the Adjusted Rental within sixty (60) days of the third appraiser's selection, which determination shall be final and binding. During the period of any appraisal(s), Lessee shall continue paying the Rental (or Adjusted Rental) in effect during the Initial Term or the preceding Renewal Term, and upon final determination of the Adjusted Rental, shall pay any excess due.

c) On January 1, 2000 and on January 1 of each year thereafter during the Initial Term and any Renewal Terms, the Rental shall be increased by the same percentage as the percentage increase in the Consumer Price Index for Urban Wage Earners, United States, Base 1982-84 = 100, issued by the Bureau of Labor Statistics of the United States Department of Labor ("CPI-W"), for the immediately preceding calendar year. If the governmental body issuing the CPI-W ceases to use the 1982-84 average of 100 as the basis for calculation, the CPI-W shall be adjusted to the figure that would have been arrived at had the manner of so calculating the CPI-W not been so changed. If the CPI-W (or a successor or a substitute index) ceases to be published or ceases to be generally recognized as an index of inflation, the parties hereto shall select and substitute an index which is mutually acceptable, published by a governmental or other disinterested body with appropriate reconciliation of the base of the substituted

index with the base of the CPI-W.  In no event shall the adjustment under this Section exceed 5% per annum.

c)  It is the intention hereof that the Lessor shall receive the Rental and all other sums due hereunder free from all taxes, charges, expenses, costs and deductions of every description (other than any net income tax payable by Lessor), and that Lessee shall pay all such items which arise out of the execution and delivery of this Lease.

5.  **Assignment and Transfer.**  Except as noted below, this Lease may not be assigned and the rights conveyed hereby may not be mortgaged or encumbered by Lessee without the prior written consent of Lessor, which consent may be withheld for any reason or be contingent upon an increase in the Rental and other sums payable hereunder.  The foregoing shall not restrict subleasing by Lessee.  Notwithstanding the foregoing, (a) Lessee may assign this Lease and the rights hereunder to any parent, subsidiary or affiliated company without the consent of Lessor, but with written notice to Lessor, (b) Lessee may assign this Lease to one successor or assign of Lessee's entire interest in Lessee's Installation upon written notice (including the proposed assignment form and any related documents) to and written approval by Lessor, such approval not to be unreasonably withheld, and (c) Lessee may grant the right to use Lessee's Installation to any of its customers in the ordinary course of Lessee's business without Lessor's prior consent, notice or approval.  For the purposes of this Section, an "affiliated" company shall mean any entity which controls, is controlled by or under common control with Lessee.

6.  **Access.**  Except as provided in Paragraph 7 hereof, Lessee's employees, invitees, agents, contractors and subcontractors shall not enter upon the RW Route or the Leased Facilities for any reason without giving Lessor at least five (5) days' prior written notice except for emergency repairs, in which event Lessee shall notify Lessor's authorized representatives by telephone prior to entry upon the RW Route or the Leased Facilities.  At Lessor's option, Lessee shall furnish Lessor's Police and Special Services Department with a list of names of Lessee's representatives performing inspection and maintenance services, and the list shall be updated and kept current at all times.

7.  **Construction and Maintenance.**

a)  Prior to commencement of any work, Lessee shall obtain, at its expense, any required permits, licenses or approvals required for the installation, operation or maintenance of Lessee's Installation and shall provide Lessor with copies of such permits and approvals upon request.

b)  The plans and installation details for Lessee's Installation shall be subject to the prior written approval of Lessor, which approval shall not be unreasonably withheld or delayed.  Preliminary plans shall be submitted to Lessor for approval prior to any work being commenced on the RW Route or the Leased Facilities.  Lessor shall provide Lessee with approval or request for corrections within forty-five (45) days of submission by Lessee.  Final plans shall be submitted to Lessor not later than thirty (30) days prior to the date scheduled for commencement of construction. Lessor's review and approval of plans, specifications and erection details hereunder shall not constitute an assumption of any liability for the design, engineering or structural integrity of the improvements proposed to be installed or constructed by Lessee.  Lessee agrees to give Lessor five (5) days' prior written notice before commencement of any maintenance on Lessee's

3

Installation, except for emergency repairs, in which event Lessee shall notify Lessor's authorized representatives by telephone prior to entry upon the RW Route or the Leased Facilities.  Names and addresses of parties to be notified by Lessee are set forth on EXHIBIT E.

c)  Lessee agrees that all work upon or in connection with Lessee's Installation shall be done at such times and in such manner as not to interfere in any way whatsoever with the railroad operations of Lessor or the facilities or operations of any other party holding a prior right or rights in the RW Route or the Leased Facilities. Lessee shall promptly repair any damage it causes to the RW Route or the Leased Facilities.  Under no circumstances shall Lessee place or allow to be placed any materials or equipment within fifteen (15) feet from the center line of any track without first obtaining the written consent of Lessor. Lessee agrees to reimburse Lessor for the cost and reasonable expense to Lessor of furnishing any materials or performing any labor (direct labor costs (i.e. salaries) plus one hundred three point zero seven percent (103.07%) for overhead) in connection with the engineering, inspection, construction, reconstruction, maintenance and removal of Lessee's Installation and related facilities, including, but not limited to, the furnishing of such watchmen, flagmen and inspectors as Lessor deems necessary.  Lessor reserves the right to require flagmen and inspectors during all periods of construction or maintenance of Lessee's Installation.

d)  Lessee shall prosecute (or cause to be prosecuted) construction of Lessee's Installation to completion with due diligence, subject, however, to unavoidable delays, including but not limited to delays due to strikes, acts of God, litigation, legal or administrative proceedings, inability to obtain labor or materials, governmental restriction, enemy action, civil commotion, fire, unavoidable casualty or similar causes or any other causes beyond the reasonable control of Lessee.

e)  Lessee agrees that prior to commencement of any construction or maintenance of Lessee's Installation Lessee will require its general contractor and each subcontractor contracting with such general contractor to execute Lessor's right of entry Lease indemnifying Lessor and any underlying landowners from and against all claims, liability, cost and expense growing out of the performance of the work to be done by such contractor.  Lessee shall bear the entire cost and expense of constructing and maintaining Lessee's Installation.  Lessor shall have the right to post notices of non-responsibility upon the RW Route or the Leased Facilities, and to otherwise notify, actually or constructively, any entity or persons supplying services or materials to the RW Route or the Leased Facilities that Lessor is not responsible for the cost thereof. The parties recognize that it may be necessary, desirable or required that streets, water, sewer, drainage, gas, power lines, communications lines, other fiber optic lines and other easements, grants, and dedications and similar rights be granted or dedicated over, across or within portions of the RW Route.  Lessee agrees that it will, if requested by Lessor and without charge therefor, join with Lessor in executing and delivering, or consenting to the execution and delivery of, such documents from time to time, and throughout the Term, as may be appropriate, necessary, or required by governmental agencies, public utility companies, or other parties desiring to cross or otherwise utilize the RW Route, for the purpose of granting such Leases, easements and dedications, provided that, except in the case of grants or dedications to governmental entities, all such grants shall be subject and subordinate to the rights of Lessee hereunder.

4

8. **Lessor's General Protective Provisions**.

a) Lessor or Lessor's agents, representatives or employees shall have the right to inspect the RW Route, the Leased Facilities and Lessee's Installation to determine whether Lessee's undertakings pursuant to this Lease are being complied with, to maintain, repair, or alter the RW Route or the Leased Facilities, and to do all other things not inconsistent with the rights granted herein, provided, however, that Licensor shall not disturb Lessee's Installation without best efforts to afford prior notice to Lessee. Lessee may request, and Lessor will make good faith efforts to accommodate such requests, to be present during any activities of Lessor posing a risk of disturbance to Lessee's Installation.

b) Lessee acknowledges that a major consideration to Lessor in setting the Rental is Lessee's representation and acknowledgment that Lessee's Installation is to be installed, operated and maintained in a manner which will not interfere with Lessor's use of the RW Route. Accordingly, Lessee covenants and agrees that it will with all due diligence, but in no event more than sixty (60) days following receipt of written notice from Lessor, protect or relocate Lessee's Installation and related facilities to such other location within the RW Route (or within other nearby rights of way owned or held by Lessor) as Lessor may reasonably designate, where such relocation or protection is necessary or advisable, in Lessor's sole discretion, in connection with Lessor's railroad operations. Lessee shall bear the entire expense of such protection or relocation.

c) Lessee understands that the presence of Lessee's Installation within the RW Route and the Leased Facilities involves risk as a result of railroad operations and maintenance activities, and Lessee agrees that such risks to Lessee's Installation will be assumed by Lessee. It is agreed that Lessor may take whatever actions it deems necessary to restore rail services or to replace or rebuild any structure or to clear or restore the RW Route or the Leased Facilities in the event of any derailment, failure or collapse of the right-of-way or other event which impairs rail service. It is agreed that during the conduct of such work, Lessor may damage or sever Lessee's Installation and/or related facilities without liability to Lessee for such actions, provided however that Lessor shall use reasonable efforts to provide Lessee with prior notification of any planned activities involving a risk of injury to Lessee's Installation and shall afford Lessee a reasonable opportunity, under the circumstances to provide for temporary or alternate service restoration.

9. **Lessee's Installation to Remain Personalty**. Lessee's Installation shall be and remain the personalty of Lessee, notwithstanding the fact that it may be affixed or attached to the RW Route or the Leased Facilities, and shall, during the Term, and upon termination thereof, belong to and be removable by Lessee. Lessee shall have the right to file public notice of the presence of Lessee's Installation pursuant to and in compliance with the Uniform Commercial Code.

10. **Condemnation**.

a) In the event of the permanent taking or condemnation by any competent authority for any public or quasi-public use or purpose of the whole or a material part of the RW Route or the Leased Facilities at any time during Lessee's use thereof, this Lease shall terminate upon vesting of title in the condemnor or the taking of possession by said condemnor, whichever first occurs, and Lessee shall receive compensation only

for the taking and damaging of Lessee's Installation, relocation expenses and loss of business or interference with Lessee's operations, and, as to the last three such items, only to the extent separately awarded by the court or tribunal fixing the award, and not as a deduction from the value of the land or the right to use the segment of RW Route taken. The remaining award balance and interest thereon, as well as the award for the land value and interest thereon, shall belong to the Lessor. Under no circumstances shall Lessee be entitled to any portion of the award representing a "bonus value" or difference between the value of the right to occupy the RW Route and the Rental and any other sums due hereunder. For the purposes of this Section, a taking which directly results in Lessee being unable to operate Lessee's Installation economically shall be deemed a material taking.

b) If the whole or any part of the RW Route or of Lessee's Installation and related facilities be taken or condemned by any competent authority for its or their temporary use, this Lease shall not terminate by reason thereof. Lessee shall continue to pay, in the manner and at the time herein specified, the full amount of the Rental and other payments due hereunder, and except to the extent that Lessee may be prevented from so doing by the terms of the order of the condemning authority, to perform and observe all of the other terms, covenants, conditions and obligations hereof on the part of the Lessee to be performed and observed, as though such taking or condemnation had not occurred. Lessee covenants that, upon the termination of any such period of temporary use or occupancy, it will, at its sole cost, restore its occupation of the RW Route as nearly as may be reasonably possible to the condition in which it was immediately prior to such taking.

11. **Damage to or Destruction of Improvements.** Lessee shall not be entitled to any abatement of the Rental or any other payment due hereunder, nor shall its obligations under this Lease be terminated during Lessee's occupancy or utilization of the rights with respect to the Leased Facilities granted herein, notwithstanding any destruction or of damage to Lessee's Installation by any cause whatsoever, except for damage to Lessee's Installation caused by the gross negligence or willful misconduct of Lessor, its agents, employees or contractors.

12. **Expiration or Termination of the Lease.** Upon the expiration of the Term or termination of this Lease, Lessee, without further notice, shall deliver up to Lessor the possession of the RW Route and the Leased Facilities. Thereupon, Lessee shall remove from the RW Route and the Leased Facilities any and all above-ground components of Lessee's Installation and other property belonging to Lessee, and shall repair any damage to the RW Route caused by such removal with all areas matching adjacent grade and profile. In addition, Lessee agrees to reimburse Lessor within thirty (30) days after receipt of an invoice delivered within thirty (30) days following the expiration or termination of this Lease for any special disposal costs Lessor reasonably may incur in disposing of below-ground components of Lessee's Installation. Notwithstanding the foregoing, Lessor may elect to take title to Lessee's Installation by giving notice to Lessee of that election within thirty (30) days after termination or expiration of this lease. If Lessor elects to take title to Lessee's Installation, Lessee shall upon request provide Lessor with a bill of sale conveying title on a quitclaim basis. Lessee shall be relieved of its removal, restoration and reimbursement obligation hereunder upon conveyance to Lessor of title to Lessee's Installation.

13. **Taxes.** In addition to the Rental specified in Paragraph 4 hereof and other sums due hereunder, Lessee shall pay and discharge, as additional rent, all taxes, general and special assessments and other charges of every description ("Impositions"), commencing with the execution of this Lease, and so long as Lessee makes any use of the RW Route or the Leased Facilities, which may be attributable to or separately levied upon or assessed against Lessee's permitted occupancy of the RW Route and the Leased Facilities, or for which Lessor may become liable, or which arise out of the execution and delivery of this Lease, including any tax or taxes on the Rental or other sums paid by Lessee to Lessor (other than Lessor's income tax). Lessee shall have the right to contest the amount or validity of any such Impositions by appropriate legal proceedings, but this right shall not be deemed or construed in any way as relieving or modifying or extending Lessee's covenants to pay any such Impositions as in this Paragraph provided. Lessee shall give Lessor prior written notice of any contest.

14. **Liens.** Lessee shall discharge any liens or encumbrances filed with respect to the RW Route or the Leased Facilities as a consequence of work, labor, services, goods or materials supplied to or for the benefit of Lessee. If Lessee fails to discharge any such liens within forty-five (45) days following notice, Lessor may pay such sums as may be necessary to discharge the liens and such sums shall be immediately due and payable by Lessee as additional Rental, and shall bear interest at 15% per annum until paid.

15. **Insurance.** Lessee shall at its expense obtain and maintain during the period of this Lease, in a form and with companies satisfactory to Lessor, the following insurance coverages:

a) Commercial General Liability Insurance with a combined single limit of not less than $2,000,000 per occurrence for injury to or death of persons and damage to or loss or destruction of property. Such policy shall be endorsed to provide products and completed operations coverage and contractual liability coverage for liability assumed under this Lease. In addition, said policy or policies shall be endorsed to name Lessor as an additional insured, as its interests may appear and shall include a severability of interests provision.

b) Railroad Protective Liability Insurance with limits of not less than a combined single limit of $5,000,000 each occurrence and $10,000,000 in the aggregate. Said policy shall name Lessor as the named insured and shall be underwritten on Insurance Services Office (ISO) Form Number CG 00 3 5 01 96 or an equivalent form satisfactory to Lessor.

c) Lessee shall furnish certificates of insurance to Lessor's Risk Manager, Three Commercial Place, Norfolk, Virginia 23510-2191, certifying the existence of its general liability insurance. Lessee shall also furnish Lessor's Risk Manager with the original Railroad Protective Liability Insurance Policy. Lessee's general liability insurance policies shall be endorsed to state that coverage shall not be suspended, voided, canceled or reduced in coverage or limits without thirty (30) days advance written notice to Lessor.

d) The insurance coverage required herein shall in no way limit Lessee's liability under this Lease.

7

16. *Indemnification.*

a)  Lessee agrees to defend with counsel approved by Lessor, indemnify and hold Lessor harmless from and against any and all loss, damage, liability, claims, demands, costs, charges and expenses (including, without limitation, attorneys' fees) and causes of action of whatsoever character which Lessor may incur, sustain or be subjected to on account of loss of or damage to or destruction of property and loss of use thereof, or for bodily injury to or death of any persons (including, but not limited to, property, employees, subcontractors, agents, servants and invitees of each party hereto or any other person to whom a duty of care is owed) arising out of or in any way connected with the work to be performed or occupancy, operation, maintenance, enjoyment or use of the RW Route or the Leased Facilities by Lessee or anyone claiming under Lessee irrespective of and including any negligence of Lessor or its agents, servants or employees, excepting only liability imposed upon Lessor on a finding of willful and wanton misconduct or gross negligence.  Lessor shall have the right to participate in the defense of any action or proceeding arising hereunder.

b)  Lessee covenants and agrees to defend with counsel approved by Lessor, indemnify and save harmless Lessor, its affiliated companies, and its and their respective officers, agents and employees, from any liabilities, costs, expenses, fines, penalties, damages or charges imposed for any violation of any and all laws, ordinances, rules, orders and regulations applicable to Lessee's use and occupancy of the RW Route or the Leased Facilities, or as a result of any discharge, leakage, spillage, emission or pollution from Lessee's Installation or occasioned by Lessee's activities hereunder, whether or not occasioned by neglect, omission or willful act of Lessee or any person present upon the RW Route or the Leased Facilities by license or invitee of Lessee or occupying the same or any part thereof under or by right of Lessee, regardless of whether such liabilities, costs, expenses, fines, penalties, damages or charges arise or are imposed during or after the expiration of the occupancy of the RW Route or the Leased Facilities. Lessor shall have the right to participate in the defense of any action or proceeding arising hereunder.   Nothing contained herein shall be. construed to hold Lessee liable for any pre-existing condition in the RW Route.

c)  Lessee shall have the right to contest, by appropriate legal proceedings and without cost or expense to Lessor, the validity of any law, ordinance or regulation of the nature herein referred to.  If, by the terms of such law, ordinance or regulation, compliance therewith may be legally held in abeyance without subjecting Lessor to any liability of whatsoever nature for the failure to so comply therewith, compliance may be postponed until the final determination of such proceeding.  Lessee, upon commencing such request shall furnish to Lessor a bond, guarantee or other document, satisfactory to Lessor, guaranteeing that Lessor and Lessor's interest in the RW Route shall be saved harmless from any penalties, damages, charges or claims resulting from any such contest.

d)  As part of the consideration hereof, Lessee agrees that each and all of its indemnity commitments in this Lease in favor of the Lessor also shall extend to and indemnify and protect Norfolk Southern Corporation, its subsidiaries and affiliates and its and their officers, agents and employees.

8

17. *Defaults and Remedies*.

a) Each of the following shall be an "Event of Default" under this Lease:

i)     Failure of Lessee to pay when due the Rental or any other sum due hereunder within ten (10) days following notice from Lessor;

ii)     The subjection of any right or interest of Lessee hereunder to attachment, execution or other levy or to seizure under legal process, if not released or bonded within sixty (60) days;

iii)     The filing of a mechanic's or materialman's lien against all or any part of the RW Route or the Leased Facilities because of acts or omissions of Lessee or its agents unless released or bonded within forty-five (45) days following demand by Lessor;

iv)     Failure of either party to perform any non-monetary obligation within thirty (30) days following notice from the other party, provided however, that if such default cannot reasonably be cured within thirty (30) days, the defaulting party shall have such additional time as is reasonably necessary to complete a cure provided such party commences to cure within the thirty (30) day period and proceeds diligently thereafter.

b) If any Event of Default shall continue uncured, following notice of default as required hereunder, the non-defaulting party may terminate this Lease by giving the defaulting party notice of termination.  In the event Lessor terminates this Lease due to Event of Default caused by Lessee, Lessee shall promptly remove Lessee's Installation and depart from the RW Route and the Leased Facilities.  If, in such event, Lessee fails to remove Lessee's Installation within thirty (30) days' notice in writing from Lessor, Lessor may arrange for removal at Lessee's expense.

18. *Notices*.  Any or all notices or demands by or from Lessor to Lessee, or Lessee to Lessor, shall be in writing and shall be deemed given upon (a) personal delivery to the addressee, (b) five (5) days after deposit into United States mail, postage prepaid, certified mail, return receipt requested, or (c) one (1) day after delivery to United States Postal Service Express Mail or similar overnight delivery service.  Until notified of a different address, as provided herein, all notices shall be addressed to the parties as follows:

If to Lessor:                                    If to Lessee:

Norfolk Southern Railway Company      Metromedia Fiber Network Services, Inc.
600 West Peachtree Street, NW           One North Lexington Avenue
Atlanta, Georgia 30308-3603               White Plains, New York 10601
Attn: Director Real Estate Development  Attn: President
                                                     With a copy to: Vice Pres., Legal Affairs

19. *No Implied Waiver*.  The waiver by either party of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant, or condition for any subsequent breach of the same or any other term, covenant or condition herein contained.

20. **Subordination**.

   a)  Lessee accepts this Lease subject to each and every limitation affecting the RW Route or the Leased Facilities, including but not limited to covenants, conditions, restrictions, easements (including pre-existing fiber optic easements), reversionary interests, bond mortgages, indentures, encroachments, leases and permits, whether or not of record, and to the rights of tenants and lessees in possession.  Lessor grants this Lease without, and expressly disclaims, any representation or warranty that the grant is consistent with the rights under which it owns or claims the right to use the RW Route or the Leased Facilities.  Lessee accepts this grant knowing that others may claim that Lessor has no right to grant the rights hereby given, and Lessee agrees to hold harmless Lessor, its affiliated companies, and its and their respective officers, agents and employees, from and against any detriments to or liabilities of Lessee arising from any such claims, including any forfeitures declared or occurring as a result of this grant. Lessor acknowledges that the Rental provided for herein is based upon the presumption that Lessee shall not be required by the holder of any superior right to pay any additional sums in order to install Lessee's Installation in the Leased Facilities.  In the event that Lessee is or becomes legally obligated to pay any sums to any third party for the right to remain in occupancy of the RW Route or the Leased Facilities, Lessee shall be entitled to deduct such amounts from the Rental.

   b)  The absence of markers, monuments or maps indicating the presence of subterranean facilities, whether belonging to Lessor or otherwise, does not constitute a warranty or representation that none exist.   Lessee accepts this grant with full cognizance of the potential presence of such occupations, acknowledging that Lessee's construction and installation costs may increase by reason thereof, and acknowledges that the owner or owners thereof may have acquired the right to continue to maintain such facilities.  Lessee recognizes that any valuation maps supplied by Lessor were not prepared for use as real estate title maps.  Lessor does not represent or suggest that the property lines and right-of-way lines shown on such maps are accurate or that any other information contained on the maps is correct.

   21. **Severability**.  If any part of any provision of this Lease or any other Lease, document or writing given pursuant to or in connection with this Lease shall be invalid or unenforceable under applicable law, said part shall be ineffective to the extent of such invalidity only, and the remaining terms and conditions shall be interpreted so as to give the greatest effect possible thereto.

   22. **Governing Law**.  The construction, interpretation and performance of this Lease shall be in accordance with the laws of the Commonwealth of Virginia.

   23. **Survival of Provisions**.  Any obligation of the parties relating to monies owed, as well as those provisions relating to limitations on liability and actions, shall survive termination or expiration of this Lease.

   24. **Force Majeure.**   Whenever a period of time is herein prescribed for the taking of any action by Lessor or Lessee, Lessor or Lessee shall not be liable or responsible for, and there shall be excluded from the computation of such period of time, any delays due to strikes, riots, acts of God, shortages of labor or materials (not caused by the party seeking the benefit of this Paragraph), war, governmental laws, regulations or restrictions, or any other cause whatsoever beyond the control of Lessor or Lessee.  The

10

provisions of this Paragraph shall not apply to the payment of Rental or the payment of other sums due Lessor under this Lease.

25. **Recordation**. Neither party hereto shall record this Lease without the written consent of the other party hereto; however, upon the request of either party, the other party shall join in the execution of a memorandum or "short form" of this Lease for the purpose of recordation. The memorandum or short form shall describe the parties and the Leased Facilities and shall incorporate this Lease by reference.

26. **Successors In Lessor's Interest/Limitation of Liability**.

a) The terms, covenants and conditions contained in this Lease shall bind and inure to the benefit of Lessor and Lessee and, except as otherwise provided in this Lease to the contrary, their respective heirs, distributees, executors, administrators, successors and assigns.

b) The obligations of Lessor under this Lease shall no longer be binding upon Lessor in the event that Lessor sells, assigns or otherwise transfers its interest in the RW Route or the Leased Facilities (or upon any subsequent lessor after the sale, assignment or transfer by such subsequent lessor). In the event of any such sale, assignment or transfer, such obligations shall thereafter be binding upon the grantee, assignee or other transferee of such interest, and any such grantee, assignee or transferee, by accepting such interest, shall be deemed to have assumed such obligations. A lease of the entire RW Route or the Leased Facilities shall be deemed a transfer within the meaning of the foregoing sentence.

c) Lessee agrees that none of Lessor's shareholders, directors, officers, agents or persons acting on Lessor's behalf (collectively, "Lessor's Parties") shall be personally liable for the performance of Lessor's obligations under this Lease. Lessee shall look solely to Lessor to enforce Lessor's obligations hereunder and shall not seek any damages against any of Lessor's Parties. Notwithstanding anything contained in this Lease to the contrary, Lessee acknowledges and agrees that Lessee shall look solely to the estate and interest of Lessor, its successors and assigns, in the Leased Facilities (or proceeds thereof), for the collection of any judgment recovered against or liability of Lessor by reason of Lessor's breach of or default under this Lease, or otherwise, and no other property or assets of Lessor or any of Lessor's Parties shall be subject to levy, execution, or other enforcement procedures for the satisfaction of Lessee's remedies under or with respect to either this Lease, the relationship of Lessor and Lessee hereunder, or Lessee's use of the RW Route or the Leased Facilities.

27. **Entire Lease**. The terms and conditions contained herein supersede all prior oral or written understandings between the parties and constitute the entire Lease between them concerning the subject matter of this Lease. This Lease shall not be modified or amended except by a writing signed by authorized representatives of the parties.

28. **Headings**. The descriptive heading of the several paragraphs of this Lease are inserted for convenience and ease of reference only and do not constitute part of this Lease.

**IN WITNESS WHEREOF**, Lessor and Lessee have executed this Lease in multiple original counterparts as of the day and year first above written.

Witness:

NORFOLK     SOUTHERN     RAILWAY
COMPANY

General Attorney

By: _C. W. Moorman_
Name: _C. W. MOORMAN_
Title: _Pres. Vice President_

Witness:

METROMEDIA     FIBER     NETWORK
SERVICES, INC.

Contract Administrator.

By: _Gerald Benedetto_
Name: _GERALD BENEDETTO_
Title: _Vice President_

12

## EXHIBIT A – RW ROUTE

24.7 miles extending from Alexandria, Virginia near Lessor's Milepost 10.80 to Manassas, Virginia near Lessor's Milepost 35.5.

## EXHIBIT B – LEASED FACILITIES

One continuous, vacant, black, two-inch duct within the RW Route beginning and ending at or around the mileposts identified in Exhibit A.

## EXHIBIT C – LESSEE'S INSTALLATION

[Exhibit C will be attached hereto upon submission by Lessee and approval by Lessor of construction plans as set forth in Paragraph 7.]

EXHIBIT D – RENTAL

$8,000 per mile per year

## EXHIBIT E – PARTIES TO BE NOTIFIED

<u>Norfolk Southern Corporation</u>:

Edward G. Cody
Division Engineer
Norfolk Southern Corporation
1120 W. Washington St.
Greenville, South Carolina  29601
(803) 228-4251
(803) 228-4243 (fax)

Danny Young
Public Utility Engineer
Norfolk Southern Corporation
99 Spring Street
Atlanta, Georgia 30303
(404) 658-2290
(404) 658-2333 (fax)

**Exhibit B**

DocuSign Envelope ID: 4C5EE544-7762-4E6C-96C9-73982E164FE8

**EXHIBIT B**

## THIRD AMENDMENT TO THE
## DUCT LEASE

This Third Amendment to Duct Lease (this "**Amendment**") is made as of April [9], 2020 ("**Effective Date**") by and between Zayo Group, LLC ("**Zayo**"), and Norfolk Southern Railway Company ("**Norfolk**"). Zayo and Norfolk may also be individually referred to as a "Party" or collectively as the "Parties."

### RECITALS

WHEREAS, Norfolk and Zayo (as assignee of Metromedia Fiber Network Services, Inc.) are parties to that certain Duct Lease dated as of November, 18, 1999, as amended (the "**Agreement**");

WHEREAS, in April 2019, Zayo exercised its right under Section 3 of the Agreement to renew the Agreement the first Renewal Term;

WHEREAS, in November 2019, pursuant to Section 4(b) of the Agreement, Norfolk initially proposed an Adjusted Rental rate for the first Renewal Term;

WHEREAS, also pursuant to Section 4(b) of the Agreement, Zayo objected to Norfolk's proposed Adjusted Rental and has hired an MAI member to complete and submit to Norfolk an appraisal;

WHEREAS, Norfolk alleges Zayo is in breach of the Agreement by failing to timely provide its appraisal pursuant to Section 4(b) of the Agreement, and Zayo disputes it is in breach of the Agreement and alleges any delay in providing its appraisal is excused as a Force Majeure delay (collectively the "**Dispute**");

WHEREAS, the Parties desire to resolve the Dispute and have agreed to further amend the Agreement as set forth herein;

NOW THEREFORE, in consideration of the foregoing and for covenants, promises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Norfolk and Zayo agree to the following:

1. Capitalized terms used in this Amendment without definition have the respective meanings given to them in the Agreement.

2. The Agreement is hereby amended by adding the following Section 4(d):

   "(d)   Notwithstanding the provisions of Section 4(b) above, with respect to the first Renewal Term, Lessor and Lessee agree as follows:

       (i)   Lessee shall provide its appraisal (the "**Lessee Appraisal**") to Lessor when the Lessee Appraisal is complete, but no later than September 1, 2020.

DocuSign Envelope ID: 4C5EE544-7762-4E6C-96C9-73982E164FE8

(ii)    Lessee shall pay to Lessor, in addition to Rental, the amount of $40,000.00 per month for each month or partial month from January 2020 until such time as Lessor has received the Lessee Appraisal (each an **"Extension Payment"**).

(iii)    In satisfaction of Lessee's obligation to pay an Extension Payment for each of January, February, March and April 2020, Lessee shall pay to Lessor the amount of $160,000.00 on or before April 13, 2020.

(iv)    Except as provided in clause (iii) above, Lessee shall pay to Lessor the Extension Payment for a given month within seven (7) business days of the beginning of such month.

(v)    The payment of each Extension Payment by Lessee shall be made without prejudice as to Lessee's rights under Section 4(b) above or its appraiser's findings regarding the fair rental value of the Leased Facilities for the first Renewal Term.

(vi)    All Extension Payments received by Lessor shall count toward any excess Rental due from Lessee to Lessor under Section 4(b) above upon the final determination of the Adjusted Rental for the first Renewal Term, but Lessor shall have no obligation to refund any portion of such Extension Payments in the event the final determination of the Adjusted Rental for the first Renewal Term is less than the sum of such Extension Payments plus the Adjusted Rental.

(vii)    Lessor and Lessee acknowledge that Lessor commissioned and completed an appraisal by an MAI member prior to receipt of the Lessee Appraisal, which appraisal constitutes the "second appraisal" under Section 4(b) above.  If Lessor disagrees with the Lessee Appraisal and thereafter the Lessor-appointed appraiser and the Lessee-appointed appraiser are unable to reach agreement on the Adjusted Rental within thirty (30) days of initial consultation, then (A) within ten (10) business days thereafter, the Lessor-appointed appraiser will provide to the Lessee-appointed appraiser a list of three (3) MAI-member appraisers (the **"List"**), (B) within ten (10) business days of receipt of the List, the Lessee-appointed appraiser shall select from the List the "third appraiser" under Section 4(b) above, (C) if the Lessee-appointed appraiser does not timely select the third appraiser under the preceding clause (B), then the Lessor-appointed appraiser shall select the third appraiser from the List, and (iv) the three appraisers thereafter shall proceed as prescribed by Section 4(b) above.

DocuSign Envelope ID: 4C5EE544-7762-4E6C-96C9-73982E164FE8

3. **Ratification**.  Except as specifically set forth in this Amendment, the Agreement is hereby ratified and affirmed in all respects and all other terms, covenants and conditions of the Agreement shall remain unchanged and shall continue in full force and effect. The above recitals are true and correct, are incorporated herein by this reference and made a part of this Amendment. The definition of "Agreement" in the Agreement is hereby amended to include this Amendment.

IN WITNESS WHEREOF and in confirmation of their consent to the terms and conditions contained in this Amendment and intending to be legally bound hereby, Zayo and Norfolk have executed this Amendment effective as of the date of execution by the last Party.

**AGREED AND ACCEPTED**:

**Zayo Group, LLC**                                **Norfolk  Southern  Railway Company**

By: _Abigail Dayton_                            By: _Patti G. Carroll_

Name: __Abigail Dayton__                    Name: __Patti G. Carroll__

Title: __General Counsel, Eastern US and Canada__   Title: __GVP Real Estate__

Date: __April 9, 2020__                         Date: __April 9, 2020__